UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LISETTE CRUZ,

               Plaintiff,

      -against-

NEW YORK CITY TRANSIT AUTHORITY and
MANHATTAN AND BRONX SURFACE
TRANSPORTATION AUTHORITY,

               Defendants.

Case No. 1:23-cv-05272 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

      Defendants New York City Transit Authority ("NYC Transit") and Manhattan and

Bronx Surface Transportation Authority ("MBSTA") (together, the "Transit Authority" or

"Defendants") move under Federal Rule of Civil Procedure ("Rule") 56 for summary

judgment on claims brought by Plaintiff Lisette Cruz ("Cruz" or "Plaintiff") for alleged

violations of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29

U.S.C. § 794; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290;

and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-801.

Dkt. 44.  The motion is fully briefed, and the Court heard oral argument on February 14,

2025.  Dkt. 61.  For the reasons set forth below, the Court GRANTS Defendants' motion.

## BACKGROUND

      Except where noted, the following facts are undisputed and are drawn from the

parties' Rule 56.1 Statements and Responses, *see* Dkt. 45 ("Dfs. SUF"); Dkt. 53 ("Pl.

RSUF"), the declarations of John J. Sweeney ("Sweeney"), Ronald Liburd ("Liburd"),

Locksley O. Wade, Baimusa Kamara ("Kamara"), Lindsey Gosin, and Renee L. Cyr, as well

as the affirmations of Miranda V. Grant and Renee L. Cyr, *see* Dkt. 46 ("Sweeney Decl.");

Dkt. 47 ("Liburd Decl."); Dkt. 48 ("Kamara Decl."); Dkt. 50 ("Cyr Decl."); Dkt. 52 ("Wade

Decl."); Dkt. 54 ("Gosin Decl."); Dkt. 55 ("Grant Aff."); Dkt. 56 ("Cyr Aff."), and the exhibits attached thereto, *see* Dkts. 50-1 to -25; Dkts. 54-1 to -2; Dkts. 56-1 to -4.

## I.    Cruz's Evidentiary Objections

Before recounting the factual background, the Court will address the objections Cruz raises to Defendants' Rule 56.1 Statement and the declarations cited therein.  Cruz (1) objects to numerous paragraphs of Defendants' Rule 56.1 Statement that rely on the Sweeney and/or Liburd Declarations as being "in violation of the requirements of Fed. R. Civ. P. 56(c)(2) and Local Civil Rule 56.1(d)" or as being conclusions of law, *see, e.g.*, Pl. RSUF ¶¶ 17, 20, 22, 50, 78; (2) objects to Defendants' reliance on Sweeney's declaration because he "is not an expert witness" and "cannot be a fact[] witness," *see, e.g.*, Pl. RSUF ¶ 23; and (3) states in her brief that she seeks to strike the Kamara Declaration, *see* Opp. at 7-9.  The Court is unpersuaded, and will address each objection in turn.

First, Cruz objects to paragraphs in Defendants' Rule 56.1 Statement that rely on the Sweeney and/or Liburd Declarations, asserting that they violate Rule 56(c)(2) and Local Civil Rule 56.1(d), "speak of facts and figures with no supporting documents," or "giv[e] no material support."  *See, e.g.*, Pl. RSUF ¶¶ 17, 20, 50, 78.  Rule 56(c)(2) permits a party to object to material cited in connection with a motion for summary judgment on the ground that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Local Civil Rule 56.1(d) similarly requires that each statement in a party's statement of material facts "be followed by citation to evidence that would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Loc. Civ. R. 56(c)(2).  Having reviewed the Sweeney and Liburd Declarations that support the statements set forth in Defendants' Rule 56.1 Statement, the Court concludes that Cruz's objections are meritless.  The declarations are based on personal knowledge, lay a proper

foundation for the information presented, and contain evidence that could be presented in a form that would be admissible in evidence. Sweeney was the head of the Worker's Compensation Division (the "Compensation Division") of the Transit Authority's Law Department from January 2019 to January 2022, a time period that included the period when the Compensation Division worked remotely during the COVID-19 pandemic, and when Cruz applied for an accommodation in September 2021. Sweeney Decl. ¶ 1; Pl. RSUF ¶¶ 27-29, 31, 54, 61. Liburd is head of Defendants' Human Resources Department and has personal knowledge of the process for reviewing accommodation requests in general, as well as the specifics of Cruz's request. *See generally* Liburd Decl. Both declarations are sworn declarations and contain information within the declarants' personal knowledge. As a result, reliance upon the Liburd and Sweeney Declarations does not violate Rule 56(c)(2) or Local Civil Rule 56.1(d).

In addition, most of Cruz's objections to the paragraphs that rely on the Sweeney and/or Liburd Declarations do not specifically controvert the facts set forth in Defendants' Rule 56.1 Statement with citation to evidence. *See, e.g.*, Pl. RSUF ¶¶ 17, 20, 50, 78. As such, "to the extent Defendants' statements are *only* disputed by reference to [these] 'general objections,' the Court will deem them undisputed." *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-cv-05360 (AJN), 2018 WL 1583289, at *2 (S.D.N.Y. Mar. 27, 2018); *see* Loc. Civ. R. 56.1(c) (facts set forth in Rule 56.1 statement "will be deemed to be admitted for purposes of the motion unless *specifically controverted*" in the response (emphasis added)); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008) ("An objection to the admissibility of a document is not the equivalent of a contention that the document's contents are untrue."); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1

statement, that fact will be deemed admitted."); *see, e.g.*, *PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharmacy*, No. 19-cv-07577 (KMK), 2023 WL 2973038, at *8 n.13 (S.D.N.Y. Mar. 28, 2023) (treating fact as admitted where plaintiff argued it was not supported by admissible evidence, but had not disputed the statements by citation to evidence).

Cruz also objects to four of the paragraphs in Defendants' Rule 56.1 Statement on the ground that they contain conclusions of law. *See* Pl. RSUF ¶¶ 18, 21-22, 65. However, none of these paragraphs contain conclusions of law.

Cruz next objects to the Sweeney Declaration on the ground that Sweeney is "not an expert witness," nor can he be a "fact[] witness given that he was not employed by" Defendants in September 2022, when Cruz was terminated. *See* Pl. RSUF ¶¶ 20, 23-26, 29-34, 37, 39, 42-45, 47-53, 94. Defendants do not purport to rely on Sweeney as an expert. *See* Dkt. 57 ("Reply") at 3; *see generally* Sweeney Decl. Instead, Sweeney is testifying as a fact witness; he was Executive Assistant General Counsel and Deputy General Counsel for the Compensation Division from January 2019 to January 2022. *See* Sweeney Decl. ¶ 1; Reply at 3. Based on his time in that role, Sweeney has personal knowledge of the Compensation Division, the effect of the COVID-19 pandemic on the Compensation Division, Cruz's role, and his own conversations with the Human Resources Department about her accommodation request. *See* Pl. RSUF ¶¶ 27-31, 54, 61, 79; *see generally* Sweeney Decl. Thus, Defendants can rely on Sweeney's declaration as evidence in support of their motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4) (declarations submitted in support of a motion for summary judgment must, among other things, "be made on personal knowledge" and "set out facts that would be admissible in evidence").

Finally, Cruz states in her brief that she moves to strike the Kamara Declaration because Kamara, the Deputy Chief of Grievance Arbitrations and Labor Litigation for NYC Transit, the MBSTA, and the Metropolitan Transportation Authority, was not identified in Defendants' Rule 26(f) Disclosure. Opp. at 7-9; *see* Kamara Decl. ¶ 1. The Court will not strike the declaration. First, Cruz's motion did not comply with Local Civil Rule 7.1, which requires a moving party to include, among other things, a notice of motion. *See* Loc. Civ. R. 7.1. Cruz did not file a notice of motion, and instead simply stated in her memorandum of law in opposition to summary judgment that she moved to strike the Kamara Declaration. *See* Opp. at 7-9. Second, a "motion to strike is not an appropriate vehicle for contesting affidavits," since Rule 12(f) permits courts to strike certain matters from pleadings, and "declarations . . . are not pleadings." *Noval Williams Films LLC v. Branca*, No. 14-cv-04711 (PAC), 2018 WL 389092, at *2 n.2 (S.D.N.Y. Jan 11, 2018) (alteration adopted). Third, even if the Court were to consider the motion to strike, it lacks merit. *Cf. Speedfit LLC v. Chapco Inc.*, 490 F. Supp. 3d 575, 583 (E.D.N.Y. 2020) ("On summary judgment, . . . courts have been willing to view motions to strike as calling the propriety of affidavits into question." (citation omitted)). Rule 56 requires that affidavits submitted in connection with a summary judgment motion be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Defendants have satisfied this requirement with respect to the Kamara Declaration. Kamara, who works in NYC Transit's Office of Labor Relations, has personal knowledge of employee discipline procedures and the consequences for certain disciplinary infractions. *See* Kamara Decl. ¶¶ 1-2, 8-10. Finally, insofar as Cruz seeks to preclude the Kamara Declaration due to Defendants' failure to identify Kamara in their initial disclosures, *see* Fed. R. Civ. P. 37(c), Cruz has not articulated how she was prejudiced by this

declaration other than to deem Kamara a "surprise witness."  Opp. at 7-9; *see Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (failure to comply with Rule 26 disclosure does not warrant sanction under Rule 36(c)(1) if there is "no prejudice to the party entitled to the disclosure"); *Roman v. RGS Fin, Inc.*, No. 17-cv-04917 (ADS), 2019 WL 4247551, at *5 (E.D.N.Y. Sept. 6, 2019) (declining to preclude affidavit of witness not included in Rule 26 disclosure where there was "no reasonable basis for asserting . . . prejudice").  Far from being unknown to Cruz, Kamara's name was on reports and e-mails related to the SIR Report and the resulting disciplinary charges, which were produced in discovery, and Cruz chose not to take any depositions.  *See* Reply at 4.  Thus, the Court will not preclude the Kamara Declaration.  *See Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171, 177 (S.D.N.Y. 2013) (declining to preclude affirmations of individuals not in Rule 26(f) disclosures at summary judgment where, among other things, the identities and scope of knowledge of the affiants were known to the opposing party).

## II.    Factual Background

### A.    The Parties

Cruz began working for Defendants in the Compensation Division on December 15, 2015.  Pl RSUF ¶¶ 1, 12; Dkt. 50-1 ("Cruz Dep. Tr.") 31:17-19.  The Compensation Division processes workers' compensation claims filed by NYC Transit and MBSTA employees.  Pl. RSUF ¶ 3.  Together, NYC Transit and the MBSTA receive approximately 4,000 to 5,000 workers' compensation claims each year.  Pl. RSUF ¶ 24.

Cruz began as a Workers' Compensation Benefit Examiner, Level 1.  Pl. RSUF ¶ 12; Cruz Dep. Tr. 31:20-24.  In December 2017, she was promoted to the position of Administrative Manager.  Pl. RSUF ¶ 15; Cruz Dep. Tr. 60:11-18.  Cruz's position as an Administrative Manager included, among other things, supervising other employees, making

sure that they were answering the phone and providing responses to e-mails, answering questions from employees she supervised, and reviewing cases to ensure they were properly progressing.  Pl. RSUF ¶¶ 40-41; Cruz Dep. Tr. 100:3-24.

When Cruz began working in the Compensation Division, she received, and acknowledged receipt of, an information package containing Defendants' employee handbook, "Rules & Regulations Governing Employees Engaged in the Operation of the MTA New York City Transit System."  Pl. RSUF ¶ 13.  She received a copy of the 2016 Rules and Regulations in 2016.  Pl. RSUF ¶ 14; *see* Dkt. 50-2 (the "2016 Rules").  These rules "are applicable to and must be obeyed by all employees."  Pl. RSUF ¶ 133 (quoting 2016 Rules r.2(a)).  The rules prohibit "sleep[ing], loaf[ing,] or loung[ing], whether on or off duty, on [Transit] Authority property," among other things.  Pl. RSUF ¶ 136 (quoting 2016 Rules r.11(e)).

### B.    COVID-19 Pandemic

On March 7, 2020, the Governor of New York issued an executive order declaring a state of emergency due to the COVID-19 pandemic, and subsequently issued executive orders directing that nonessential businesses operate at no more than 50 percent capacity.  Pl. RSUF ¶¶ 27-28; Sweeney Decl. ¶¶ 17-18.  Defendants directed their administrative employees, including those working in the Compensation Division, to stay at home.  Pl. RSUF ¶ 29.  During this time period, the Compensation Division's system for processing claims involved receiving and manually processing paper, most of which was sent to the Compensation Division through the mail.  Pl. RSUF ¶ 23; *see also* Pl. RSUF ¶ 5.  Because Compensation Division employees were not physically in the office as a result of Defendants' directive, they were not able to open and process mail, and "buckets and buckets" of mail accumulated during this initial closure.  Sweeney Decl. ¶ 19; Pl. RSUF ¶ 30.  After the initial closure, the

Governor of New York ordered that all nonessential workers begin to work remotely for an indefinite period of time.  Pl. RSUF ¶ 31.

The Compensation Division struggled to adapt to remote work, since some employees did not have personal computers that could access Defendants' computer network and had to be supplied with software, credentials, and even equipment to enable them to connect.  Pl. RSUF ¶¶ 32-33.  These difficulties resulted in an "enormous" backlog in claims, and processing claims became more difficult and took longer.  Pl. RSUF ¶¶ 37-38; Sweeney Decl. ¶ 24; Cruz Dep. Tr. 107:7-108:9.  The Compensation Division also struggled to hold division-wide meetings via Microsoft Teams during the COVID-19 pandemic because many employees would lose their connection to Microsoft Teams and then struggled to reconnect to the meeting.  Pl. RSUF ¶ 47.

On May 28, 2021, Theresa Murphy, an executive assistant general counsel who worked for Defendants, e-mailed all divisions of the Law Department, including the Compensation Division, to inform them that the Law Department would return to work at 50 percent capacity on "September 15, 202[1]."  Pl. RSUF ¶ 54[1]; Dkt. 50-3 at 1.  She attached a FAQ sheet, which stated that "[e]mployees should contact their People (Human Resources) department for information and questions about reasonable accommodations."  Dkt. 50-3 at 5; Pl. RSUF ¶ 56.

### C.    Cruz Applies for an Accommodation

Cruz applied for an accommodation on or about September 3, 2021.  Pl. RSUF ¶ 57; Cruz Dep. Tr. 133:15-19; Dkt. 50-4.  In her request, Cruz sought an accommodation to

---

[1] Cruz has not articulated why Pl. SUF ¶ 54, quoting a department-wide e-mail setting forth the new office policy, attached to a sworn declaration, violates Rule 56(c)(2) or Local Civil Rule 56.1(d), and therefore the Court overrules the objection.  Cruz does not dispute the contents of the e-mail.

"continue to work fully remote[ly]" due to her "severe bilateral knee and back disabilities" that had "worsened" within the last year, limiting her ability "to walk and stand for prolonged periods of time and climb[] stairs." Dkt. 50-4 at 1; *see also* Cruz Dep. Tr. 133:25-134:10 (similar); Pl. RSUF ¶ 62. Cruz emphasized her difficulty using the subway to get to work because it involved climbing multiple steps of stairs. *See* Dkt. 50-4 at 1; *see also* Pl. RSUF ¶ 62. Cruz submitted a letter from Nurse Practitioner Albalira Gibson Borrelli ("NP Gibson Borrelli") with her application. Dkt. 50-4 at 6. NP Gibson Borrelli wrote that Cruz "ha[d] been diagnosed with arthritis in both knees which cause[s] extreme amount of pain. She is unable to climb the subway stairs or stand for prolonged periods of time." Dkt. 50-4 at 6.

When a disability is "not obvious or easy to resolve," the Human Resources Department works with Occupational Health Services ("OHS") to determine whether the employee has a disability and whether the requested accommodation is medically appropriate, or if another accommodation is medically appropriate. Pl. RSUF ¶ 65; Liburd Decl. ¶ 6. If OHS determines that an employee's requested accommodation is medically appropriate, then the Human Resources Department considers "the nature of the employee's position and its essential functions, as well as the potential costs and impact of the requested accommodation, to determine whether the accommodation is operationally feasible . . . or if it would pose an undue hardship." Liburd Decl. ¶ 14.

On or about September 10, 2021, Liburd received OHS's review of Cruz's request. Pl. RSUF ¶ 66; *see* Liburd Decl. ¶¶ 1, 7; Dkt. 50-5 at 2. OHS's review reflected that "[b]ased on the medical documentation provided, [Cruz] . . . need[ed] to submit additional medical information to substantiate [her] request." Dkt. 50-5 at 2. The OHS review also included several questions about the additional information sought from Cruz's medical provider. *See* Dkt. 50-5 at 2. The questions included: "[i]s the arthritis in both knees mild, moderate or

9

severe and on what basis?"; "[w]hat is the prognosis?"; "[w]hat is the treatment?"; "[i]s she having any side effects from this treatment?"; and "[i]s this a temporary or permanent disability?"  Dkt. 50-5 at 2.  After receiving the OHS review, Liburd sent a "Notification of Need for Additional Information" form and the OHS review to Cruz later the same day.  Pl. RSUF ¶ 67; Dkt. 50-5 at 1-2; Liburd Decl. ¶ 7.

Following this notification, Cruz submitted a short letter from NP Gibson Borrelli dated September 11, 2021, in support of her accommodation request.  Pl. RSUF ¶ 68; *see* Dkt. 50-6.  The note again stated that Cruz had "been diagnosed with arthritis in both knees which cause[s] extreme amount of pain.  She is unable to climb the subway stairs or stand for prolonged periods of time."  Dkt. 50-6.  NP Gibson Borrelli's note added that Cruz was "unable to travel from the [B]ronx to [B]rooklyn," where the Compensation Division's office is located, "due to this disability," and that "[h]er knees are very unstable and [she] has severe pain with accessing stairs."  Dkt. 50-6; *see* Pl. RSUF ¶ 4.  On September 13, 2021, the OHS Assistant Medical Director sent a letter to the Human Resources Department stating that, based on the additional medical documentation provided, Cruz did "not qualify for an accommodation" because the "[a]dditional information was . . . determined to be insufficient, incomplete or illegible" and "[s]pecific questions" from the previous OHS review "were not addressed in the medical response."  Dkt. 50-7; Pl. RSUF ¶ 69.

On September 14, 2021, Liburd sent Cruz a Notification of Agency Determination denying Cruz's request.  Pl. RSUF ¶ 70; Liburd Decl. ¶ 10; *see* Dkt. 50-8.  The Notification of Agency Determination stated that Cruz's request was being denied because her "department [was] unable to Accommodate [her] request."  Dkt. 50-8 at 2.  It also listed options for Cruz to pursue if she was unsatisfied with the determination, including choosing "to file an internal discrimination complaint with the [*Agency EEO/Diversity Office*] at this time if you feel that

discrimination or retaliation in violation of the Agency's policies has occurred," or "pursuing all other available rights including but not limited to filing a complaint with administrative agencies such as the Equal Employment Opportunity Commission" or other available forums. Dkt. 50-8 at 2 (alteration in original).  On September 14, 2021, Cruz e-mailed Liburd's office to inquire about whether there was an appeal process in which she could "submit more records[,] including diagnostic reports[,] to show the severity of [her] disability." Dkt. 50-9 at 2.  She and Liburd discussed the appeal process by phone that day, *see* Liburd Decl. ¶ 11; Pl. RSUF ¶ 71, and Cruz thereafter e-mailed Liburd her rejection of the denial determination, *see* Dkt. 50-9 at 1, 4-5.  On September 14, 2021, Liburd responded, confirming that he received her rejection and that "[p]ursuant to [their] conversation, [Cruz] ha[d] until **COB Wednesday September 22**, to submit additional medical documents to substantiate [her] claim for [a reasonable accommodation]." Dkt. 50-9 at 1; *see* Pl. RSUF ¶ 73.  In connection with her appeal, Cruz submitted a letter from NP Gibson Borrelli dated September 17, 2021, providing more detail about Cruz's knee conditions and explaining that Cruz would benefit from working from home because she could not "walk more than three blocks or climb more than three steps without pain." Dkt. 50-10 at 1; *see* Pl. RSUF ¶ 74.  Cruz also submitted copies of radiology reports for MRIs of both her knees.  *See* Dkt. 50-10 at 2-5; Pl. RSUF ¶ 74.

OHS reviewed Cruz's additional medical documentation and on September 20, 2021, sent Liburd a letter stating that Cruz "qualifie[d] for a temporary accommodation for remote work due to severe knee pain after 3 stairs or walking 3 blocks." Dkt. 50-10 at 6; Pl. RSUF ¶ 75.  OHS found that "[b]ased on the medical documentation provided," Cruz qualified for a "2 month[]" "temporary accommodation for remote work," and should "provide [a] medical note update in 2 months." Dkt. 50-10 at 6; Pl. RSUF ¶ 75; Liburd Decl. ¶ 13.

Liburd and the Human Resources Department then proceeded to the second part of the reasonable-accommodation review process: determining whether the accommodation was operationally feasible or if it would present an undue hardship.  Liburd Decl. ¶¶ 14-15; Pl. RSUF ¶ 76.  In making this determination, the Human Resources Department considers factors including, "among other things, the size of the department or division, the type of operation (including the composition and structure of the work force), the impact of the requested accommodation on other employees[,] and the nature and cost of the requested accommodation."  Liburd Decl. ¶ 15; Pl. RSUF ¶ 77.  The Human Resources Department often contacts the employee's supervisor, manager, or department "to find out more about the employee's position and its essential functions," their "role within the department," and "the feasibility of the requested accommodation."  Liburd Decl. ¶ 16; Pl. RSUF ¶ 78.  In September 2021, Liburd contacted Sweeney, the then-head of the Compensation Division, about Cruz's request.  Sweeney Decl. ¶ 33; Liburd Decl. ¶ 17; Pl. RSUF ¶ 79.  Sweeney told Liburd that it was necessary for Cruz to be on site, in the office, to perform the essential functions of her job as an Administrative Manager, particularly the supervisory tasks involved in her role, and that permitting Cruz to work remotely would create an undue hardship to the Compensation Division and to Defendants.  Sweeney Decl. ¶ 34; Pl. RSUF ¶¶ 81-82.  Defendants then determined that Cruz's requested accommodation was unreasonable under the circumstances, since it would eliminate an essential function of her position and would pose an undue hardship to Defendants and their employees.  Pl. RSUF ¶ 83[2]; Liburd Decl.

---

[2] Cruz objects to paragraph 83 of Defendants' Rule 56.1 Statement because it "belies the assertions made in paragraph 75 of this documents [*sic*]."  Pl. RSUF ¶ 83.  The two statements are not inconsistent because paragraph 75 concerns Defendants' initial medical determination regarding whether an accommodation was medically justified, and paragraph 83 concerns the second part of Defendants' assessment regarding whether the accommodation was

¶ 20.  On September 21, 2021, Liburd completed and sent a second Notification of Agency

Determination (the "Second Determination") to Cruz, informing her that her "[r]equest for

Reasonable Accommodation has been denied."  Dkt. 50-11 at 2; Pl. RSUF ¶ 84; Liburd Decl.

¶ 21.  The Second Determination noted that "[n]otwithstanding that denial, we believe it

would be prudent to utilize Access-A-Ride," the point-to-point paratransit service that the

Metropolitan Transit Authority provides customers with disabilities who cannot use public

buses or subways, Dkt. 50-11 at 2; Pl. RSUF ¶ 85, and that her "presence [was] required in the

office to perform the essential functions of [her] job," Dkt. 50-11 at 2.

Liburd and Cruz discussed the Second Determination, and Cruz told Liburd that she

would refute the determination.  Liburd Decl. ¶ 23; Pl. RSUF ¶ 86.[3]  Liburd did not receive

appeal paperwork from Cruz appealing the Second Determination.  Liburd Decl. ¶ 23; Pl.

RSUF ¶ 87.[4]  He also was not contacted by Defendants' internal Office of Equal Employment

---

operationally feasible or instead created an undue hardship.  Cruz does not otherwise dispute
that Defendants made the determination set forth in paragraph 83.

[3] Cruz objects to this statement, stating that it violates the requirements of Rule 56(c)(2) and
Local Civil Rule 56.1(d), and because "there is [*sic*] no words in the citation supporting this
statement."  Pl. RSUF ¶ 86.  Cruz has not established a dispute of fact as to whether she had a
discussion of the Final Agency Determination with Liburd because she cites only to her
deposition testimony stating that Liburd did not "tell [her] why [her] accommodation request
had not been approved."  Cruz Dep. Tr. 141:5-8; *see* Pl. RSUF ¶ 86.  Not only does her
testimony not refute that she discussed the determination with Liburd and told him that she
would be refuting the determination, but the Second Determination also expressly states that
Cruz's request for a reasonable accommodation was denied, that Cruz's "presence is required
in the office to perform the essential functions of [her] job," and that she may want to consider
Access-A-Ride.  Dkt. 50-11.

[4] Cruz objects to this statement on the ground that it is inconsistent with her deposition
testimony.  Pl. RSUF ¶ 87 (citing Cruz Dep. Tr. 164:11-17).  However, in the cited portion of
her deposition, Cruz explains that she did not send Liburd appeal paperwork because she had
already received a response from Liburd about her previous request and "figured" that Human
Resources was "already out of the loop at that point, and [she] would be in contact with [her]
direct supervisor."  Cruz Dep. Tr. 162:10-164:17.  This does not create a genuine dispute of

Opportunity about any complaint of discrimination related to the denial of Cruz's accommodation request.  Pl. RSUF ¶ 88.  Cruz did not contact Liburd's office to propose an alternative accommodation.  Pl. RSUF ¶ 90.  When the Human Resources Department did not receive an appeal or further contact from Cruz, the office concluded that she had chosen to accept the Access-A-Ride recommendation and end the process.  Pl. RSUF ¶ 91; Liburd Decl. ¶ 24.

Shortly after Cruz received the Second Determination, she applied to use Access-A-Ride.  Pl. RSUF ¶ 92; Cruz Dep. Tr. 156:15-20.  Her request was approved within a week or two, and she began using Access-A-Ride in or about the end of September or early October 2021.  Pl. RSUF ¶ 92.  Cruz did not contact Liburd or the Human Resources Department at any time to inform them that Access-A-Ride was not an effective solution for her.  Pl. RSUF ¶ 96.[5]  She did not submit a second reasonable-accommodation request, Liburd Decl. ¶ 26; Cruz Dep. at 165, despite expressing an intent to "see if [the Transit Authority] can revisit [her] reasonable accommodation" in a text to another Administrative Manager on March 16, 2022, Pl. RSUF ¶¶ 95, 97.

---

material fact about whether Cruz appealed the Second Determination, and the Court treats paragraph 87 of Defendants' Rule 56.1 Statement as admitted, as well as the other paragraphs where Cruz relies on her response to paragraph 87, *see, e.g.*, Pl. RSUF ¶¶ 88, 89, 90-91, 96-97, 103.

[5] Cruz's citation to her deposition testimony does not dispute the statement in paragraph 96 of Defendants' Rule 56.1 Statement because it refers only to Cruz relaying to her supervisor that she was drowsy from the pain medications that she was taking, *see* Cruz Dep. Tr. 116:8-25. This does not specifically controvert the factual statements in paragraph 96 statement, namely, that Cruz never informed Liburd or the Human Resources Department that Access-A-Ride was not an effective solution.  The Court treats the factual statements in paragraph 96 as admitted.

### D.    Cruz Submits an FMLA Application

In the meantime, on September 17, 2021, Cruz submitted an application for intermittent leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA").  Pl. RSUF ¶ 107; *see* Dkt. 50-14 at 2.  On December 6, 2021, a member of the Office of Labor Relations, FMLA & Leave Support, e-mailed Helen Smart ("Smart"), a member of the Law Department, to ask whether she had "receiv[ed] the medical portion" of Cruz's FMLA leave application.  Dkt. 50-14 at 1; Pl. RSUF ¶ 108.  Smart followed up with Cruz the same day and asked if her "Doctor complete[d] the Medical Certification."  Dkt. 50-14 at 1; *see* Pl. RSUF ¶ 108.  Cruz replied on December 7, 2021, stating that her doctor "ha[d] not completed the form as of yet.  I have to schedule another appointment to see her.  My last 2 appointments were cancelled.  You can close out for now and I will reapply once I have the form completed by her."  Pl. RSUF ¶ 109 (quoting Dkt. 50-14 at 1).

### E.    Defendants Investigate Cruz Sleeping During Work

About a year later, on September 21, 2022, the Division of Special Investigations & Review ("SIR") received an anonymous phone call reporting that a "Workers' Compensation Manager" was asleep at her desk.  Pl. RSUF ¶ 110[6]; *see* Dkt. 50-17 ("SIR Report").  At 11:53 a.m. that day, SIR Director Thomas Cappiello ("Cappiello") and Assistant Chief Officer Lauri Gregory ("Gregory") arrived at Cruz's cubicle and reported that they observed her sleeping at her desk, facing her computer, with earphones in her ears.  Pl. RSUF ¶ 111; Dkt. 50-15 at 1.

---

[6] Cruz does not dispute this paragraph.  Instead, her response states that "[t]he plaintiff describes this as a medical event where she had a loss of consciousness," and cites to her deposition transcript, in which she stated the same.  Pl. RSUF ¶ 110 (citing Cruz Dep. Tr. 176:5-10).  This does not create a genuine dispute of fact with paragraph 110 of Defendants' Rule 56.1 Statement, which states that SIR received an anonymous phone call that Cruz was asleep at her desk, and the Court will treat the factual statements in paragraph 110 as admitted.

Cruz characterizes the instance as one where she had a "los[s of] consciousness," Cruz Dep. Tr. at 176:5-6, although her counsel described it as "dozing on the job" during oral argument. Gregory tried to take a photograph of Cruz, but Cruz opened her eyes when Gregory did so. Pl. RSUF ¶ 112; Dkt. 50-15 at 1. Gregory and Cappiello reported that Gregory asked Cruz why she was sleeping, and Cruz responded that she did not sleep well the night before due to back and knee pain. Pl. RSUF ¶ 113; Dkt. 50-15 at 1 (memorandum from Gregory describing discovery of Cruz sleeping on September 21, 2022, and their subsequent conversation); Dkt. 50-17 at 1-2 (SIR Report reflecting same discussion); *see also* Dkt. 50-16 at 1 (Cruz written statement to SIR investigators, in which she notes she told Gregory and Cappiello that she "was . . . sleeping . . . [because she] did not sleep well at night due to [her] bilateral knee and back condition[s], causing [her] severe pain from the previous days [*sic*] routine"). Cruz also told Gregory and Cappiello that in early September 2021, she requested a reasonable accommodation to work from home because it was hard for her to climb stairs in the train stations due to the pain in her back and knees, but her request was denied. Pl. RSUF ¶¶ 113-114; Dkt. 50-15 at 1.

Gregory and Cappiello directed Cruz to write a statement in a G-2 form about the incident on September 21, 2022. Pl. RSUF ¶ 115 (quoting Cruz Dep. Tr. 177:10-16); *see also* Cruz Dep. Tr. 174:25-177:16. Cruz sent Gregory and Cappiello her written statement on September 21, 2022, recounting that she "was met at [her] desk by Lauri Gregory and Thomas Cappiello at which point was 11:57 a.m., I awoke and removed both of my earbuds and closed the Teams application." Pl. RSUF ¶ 116 (quoting Dkt. 50-16 at 1).

As part of its investigation into Cruz's alleged sleeping at work, SIR issued a report that states that it interviewed seven other Compensation Division employees, five of whom informed SIR that they had seen Cruz asleep at her desk at least once in the past year. Pl.

RSUF ¶ 117[7]; SIR Report at 2-4. The report states that Andrew Zhen, who sat next to Cruz, reported to SIR that Cruz had been sleeping on and off for over an hour on the day Gregory and Cappiello discovered her sleeping at her desk, and that she normally slept during the day and awoke when the phone rang. Pl. RSUF ¶ 118; SIR Report at 2. He reported to SIR that in November or December 2021, he first saw Cruz sleeping at her desk every other day, and that he had seen her sleeping at her desk every day since January 2022. Pl. RSUF ¶ 119; SIR Report at 2. He further told the SIR investigators that Cruz permitted him to review and "action [his] own claims," though Cruz was supposed to review them. Pl. RSUF ¶ 120 (quoting SIR Report at 2). The SIR Report reflects that Balbina Ramos, another Compensation Division employee supervised by Cruz, told SIR that she had seen Cruz sleeping at her desk three to four days per week since March or April 2022, that Cruz did not assign her work, and that she sent Cruz e-mails about what she did at work. Pl. RSUF ¶¶ 121, 123, 128; SIR Report at 2. Charmaine Phillips, another employee supervised by Cruz, similarly reported to SIR that she had occasionally seen Cruz sleeping in October 2021, but that since the beginning of summer 2022, she had noticed Cruz sleeping every day for a large part of the day. Pl. RSUF ¶¶ 124, 128. Joseph Varfley, another Administrative Manager, reported to SIR that he had seen Cruz sleeping twice in the last two months; David Silberstein,

---

[7] Cruz objects to this paragraph, as well as others that cite the SIR Report, on the ground that they violate Rule 56(c)(2) and Local Civil Rule 56.1(d) because the SIR Report contains the "statements of third parties that is inadmissible." Pl. RSUF ¶ 117; *see id.* ¶¶ 118-128. Defendants argue that the statements in the SIR Report are admissible because the report is not offered for its truth but rather as proof of what motivated Defendants' decision to terminate Cruz. *See* Reply at 5. The Court agrees that the report is admissible as non-hearsay for this purpose. *See Gentleman v. State Univ. of N.Y. Stony Brook*, No. 21-1102, 2022 WL 1447381, at *4 (2d Cir. May 9, 2022) (summary order) (rejecting argument that student complaints of bullying were inadmissible hearsay, since district court could consider them as proof of defendants' motive for taking the adverse employment action).

also an Administrative Manager, reported that he had seen Cruz sleeping at her desk once a few months prior.  Pl. RSUF ¶¶ 125-126.

### F.    Disciplinary Proceeding and Cruz's Termination

On November 9, 2022, Cruz was charged with "Sleeping on Duty, Gross Misconduct, Non-performance of Duty, and Improper Performance of Duty."  Dkt. 50-19; *see* Pl. RSUF ¶ 137.  The recommended penalty was dismissal.  Pl. RSUF ¶ 137; *see* Dkt. 50-19.

On November 21, 2022, Cruz appealed the disciplinary charges in a letter to the head of the Law Department, General Counsel David Farber ("Farber"), as permitted by Defendants' managerial discipline policy.  Pl. RSUF ¶¶ 146-147; *see* Dkt. 50-20; Kamara Decl. ¶ 16.  In the letter, Cruz stated that she was able to effectively manage and perform daily responsibilities while working from home during the COVID-19 pandemic, and discussed medical treatment she had received for her knees, her trouble sleeping, pain medication she took for her knees, and difficulties with using Access-A-Ride.  *See* Dkt. 50-20; Pl. RSUF ¶ 148.  Cruz also noted that she had discussed both her difficulties using Access-A-Ride and her medical issues with her direct supervisor, Ashley Kim, and claimed that "nothing was ever done to accommodate [her] hardship."  Dkt. 50-2- at 1.  She did not attach any medical records or physicians' statements to her letter.  Pl. RSUF ¶ 148.

On December 30, 2022, Farber issued a Notice of Final Determination upholding the penalty of dismissal.  Pl. RSUF ¶ 150; *see* Dkt. 50-21.

## III.    Procedural History

On May 22, 2023, Cruz brought suit against Defendants in the New York Supreme Court, County of New York, alleging violations of the NYSHRL, NYCHRL, and the Rehabilitation Act.  Dkt. 1-1 ("Compl." or "Complaint") ¶¶ 17-51.  After answering the Complaint on June 13, 2023, *see* Dkt. 1-2, Defendants removed the case to this Court on June

21, 2023, Dkt. 1.  Following an initial pretrial conference on June 27, 2023, Dkt. 5, Cruz

sought leave to amend the Complaint on August 17, 2023, Dkt. 13.  The Court granted the

motion, Dkt. 14, and Cruz filed an Amended Complaint on August 18, 2023, Dkt. 15 ("AC"

or "Amended Complaint"), which Defendants answered the same day, *see* Dkt. 16.  The AC

alleged largely identical claims, but in a different order.  *Compare* AC ¶¶ 17-51 (placing

federal claims before state claims), *with* Compl. ¶¶ 17-51 (placing state claims before federal

claims).

Defendants moved for summary judgment on July 1, 2024.  Dkt. 44; Dkt. 49 ("Br.").

Cruz filed her opposition on July 29, 2024, Dkt. 51 ("Opp."), and, following an extension,

Defendants submitted their reply on August 13, 2024, *see* Reply; Dkt. 59.  The motion is thus

fully briefed.  The Court held oral argument on February 14, 2025.  *See* Dkt. 61.

## LEGAL STANDARD

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or

defense, that party "shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material'

only if it 'might affect the outcome of the suit under the governing law.'  A dispute is

'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"  *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL

6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (citation omitted) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact."  *JTRE Manhattan Ave. LLC v.

Cap. One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

In ruling on a motion for summary judgment, "the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (citation omitted) (internal quotation marks omitted).  To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Cruz alleges that Defendants terminated her on the basis of her disability in violation of the Rehabilitation Act, the NYSHRL, and the NYCHRL, *see* AC ¶¶ 17-21, 27-31, 37-41 (Counts I, III, and V, respectively); that Defendants refused to provide her with a reasonable accommodation for her disability in violation of the Rehabilitation Act, the NYSHRL, and the NYCHRL, *see* AC ¶¶ 22-26, 32-36, 42-46 (Counts II, IV, and VI, respectively); and that Defendants refused to engage in an interactive process regarding her request for a reasonable accommodation in violation of the NYCHRL, *see* AC ¶¶ 47-51 (Count VII).  Defendants move for summary judgment on Counts I and II of the AC, Cruz's Rehabilitation Act claims, and request that the Court decline to exercise supplemental jurisdiction over Counts III, IV, V, VI, and VII, Cruz's NYSHRL and NYCHRL claims.  Br. at 1, 25.  The Court will first address Cruz's Rehabilitation Act claims and then address supplemental jurisdiction.

### I.    Rehabilitation Act Claims (Counts I and II)

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Claims

under the Rehabilitation Act are generally analyzed using the same standards that govern

claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*

*See Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 355 (S.D.N.Y. 2016) (collecting cases).

Cruz claims that Defendants violated the Rehabilitation Act by terminating her (Count

I) and failing to accommodate her disability (Count II).  Defendants seek summary judgment

on both counts.  The Court will address Cruz's failure-to-accommodate claim before her

discriminatory termination claim.

### A.   Failure-to-Accommodate Claim (Count II)

In Count II, Cruz claims that Defendants discriminated against her in violation of the

Rehabilitation Act when they refused to provide her with a reasonable accommodation.  AC

¶¶ 22-26.  Specifically, Cruz alleges that in September 2021, she requested remote work as an

accommodation due to medical conditions including degenerative knee arthritis, insomnia,

and sleep apnea, and that her request was denied.  *Id.* ¶¶ 10-11.

### 1.   Legal Standard

To establish a *prima facie* case of discrimination based on an employer's failure to

accommodate a disability under the Rehabilitation Act, a plaintiff must demonstrate that

(1) the plaintiff "is a person with a disability under the meaning of [the Rehabilitation Act]";

(2) "an employer covered by the statute had notice of [her] disability"; (3) "with reasonable

accommodation, plaintiff could perform the essential functions of the job at issue"; and

(4) "the employer has refused to make such accommodations."  *Natofsky v. City of New York*,

921 F.3d 337, 352 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583

F.3d 92, 97 (2d Cir. 2009)).  After a *prima facie* case is established, "an employer can defeat

such a claim if it shows '(1) that making a reasonable accommodation would cause it

hardship, and (2) that the hardship would be undue.'" *Quadir v. N.Y. State Dep't of Lab.*, No. 13-cv-03327 (JPO), 2016 WL 3633406, at *2 (S.D.N.Y. June 29, 2016) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)), *aff'd*, 691 F. App'x 674 (2d Cir. 2017) (summary order). "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012).

### 2.  Analysis

Defendants argue that they are entitled to summary judgment on Count II because (1) Cruz's requested remote-work accommodation would have imposed an undue hardship on Defendants; (2) Cruz failed to appeal the denial of her reasonable-accommodation request in September 2021 and did not make any reasonable-accommodation requests after the September 2021 denial; and (3) the remote-work accommodation would not have enabled her to perform the essential functions of her job.  Br. at 23-25; *see id.* at 12.  Because Defendants have established that there is no genuine issue of material fact that Cruz could not perform the essential functions of her job with the proposed remote-work accommodation, and because such an accommodation would have imposed an undue hardship on Defendants, the Court need not address Defendants' second argument, although it is undisputed that Cruz never appealed from the Second Determination denying the remote-work accommodation and never contacted Liburd or Human Resources to inform them that Access-A-Ride was not an effective solution for her.  Pl. RSUF ¶¶ 87-91, 96.

As a threshold matter, the record does not reflect that Cruz ever requested an accommodation based on her alleged insomnia or sleep apnea, nor that she ever told her supervisors that she was having trouble staying awake during the day.  *See* Dkt. 50-4 at 1

(identifying the reason for her request as "severe bilateral knee and back disabilities"); *id.* at 6 (NP Gibson Borrelli letter requesting work-from-home accommodation because "Cruz has been diagnosed with arthritis in both knees"); Cruz Dep. Tr. 117:7-10 (Cruz acknowledging that she never told her supervisor that she was "having trouble staying awake during the day"). Indeed, the record reflects that Cruz was not diagnosed with sleep apnea until December 2023. *See* Dkt. 56-4 at 3. "While the failure to make a request is not fatal to a claim for a reasonable accommodation, the failure to make a request is a consideration because it is '[g]*enerally* . . . the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" *Nixon-Tinkleman v. N.Y.C. Dep't of Health & Mental Hygiene*, 434 F. App'x 17, 19 (2d Cir. 2011) (summary order) (alteration and omission in original) (internal quotation marks omitted) (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)).

In any event, Defendants argue that they are entitled to summary judgment because Cruz's requested work-from-home accommodation would not have permitted her to perform the essential functions of her job. "[I]n the context of an employment discrimination claim[,] . . . an individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir. 1995); *accord Hoffman v. City Univ. of N.Y.*, No. 20-cv-01729 (PGG) (RWL), 2024 WL 4120902, at *6 (S.D.N.Y. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 3936483 (S.D.N.Y. Aug. 26, 2024). "Essential functions" are the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1) (2012); *accord Brown v. Triboro Coach Corp.*, 153 F. Supp. 2d 172, 185 (E.D.N.Y. 2001). "When determining the essential functions of a given job, courts engage in a fact-specific inquiry of both the

employer's own description of the position and 'how the job is actually performed in practice.'" *Wagner v. Inter-Con Sec. Sys., Inc.*, 278 F. Supp. 3d 728, 736 (S.D.N.Y. 2017) (quoting *Goonan v. Fed. Rsrv. Bd. of N.Y.*, 916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013)). Courts in this Circuit consider certain factors in conducting this inquiry, including "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)). "After the essential functions of the position are determined, the plaintiff must demonstrate that he or she could have performed those functions, with or without reasonable accommodation . . . ." *Id.* at 127.

As Cruz herself testified, her position as an Administrative Manager involved supervising other employees, reviewing workers' compensation cases to ensure they were properly progressing, and making sure her supervisees were answering the phone and providing responses to e-mails. Cruz Dep. Tr. 100:3-24; *see also* Dkt. 56-3 at 1 (job description for Cruz's position listing job responsibilities that included "[m]anag[ing] complex cases" and "staff development and performance assessment evaluations"). Defendants learned during the COVID-19 pandemic that in-person supervision was "critical" for Compensation Division employees and that remote supervision was not effective. Sweeney Decl. ¶¶ 24-26. For example, remote supervision did not allow Administrative Managers to "stop by an employee's desk to see what they are doing and if they are working at all," *id.* ¶ 25, and Administrative Managers could only interact with their supervisees "if those Claims employees answered their phones," *id.* ¶ 26. Permitting Cruz to work from home would therefore have prevented her from performing an essential job function — the in-

person supervision of the employees she managed.  *See, e.g.*, *id.* ¶¶ 30-31, 34.  Defendants

also point out that Cruz could not have performed the essential function of her job by working

from home, since it is undisputed that she fell asleep during working hours while working

remotely in August 2021.  Br. at 24; Pl. RSUF ¶ 132.

Cruz does not dispute that the essential functions of her job included in-person

supervision (as well as staying awake and/or being conscious), nor does she identify any

evidence in the record suggesting that she could have performed this essential function

remotely.  Instead, she conclusorily asserts that Defendants have "failed to make any

argument detailing the essential job functions of Cruz's position" and have impermissibly

relied on the Sweeney Declaration.  Opp. at 13.  The Court does not agree.  The undisputed

factual record reflects information detailing the functions of Cruz's position as Administrative

Manager, both from the Sweeney Declaration and Cruz's own deposition testimony.  The

Court has already rejected Cruz's objections to the Sweeney Declaration.  *See supra* pp. 2-4.

Contrary to Cruz's assertions, Sweeney's testimony does not constitute a *post hoc*

rationalization given that Sweeney had particular personal knowledge of Cruz's job function

and the work of the Compensation Division, since he was in charge of the Compensation

Division when Cruz's reasonable-accommodation request was denied.  Thus, Cruz has failed

to create a genuine dispute of fact about whether she could have performed the essential

functions of her job with her requested accommodation.

Defendants also argue that permitting Cruz to work from home would have imposed

an undue hardship on the Compensation Division because (1) her job duties required in-

person supervision of other employees, (2) the Compensation Division was facing a claims

backlog after the COVID-19 pandemic, and (3) the Compensation Division had lost other

managerial employees and could not reassign her tasks.  Br. at 23; *see* Pl. RSUF ¶¶ 37, 40-45,

48-52; Reply at 5-8.  "The term 'undue hardship' means 'an action requiring significant difficulty or expense,'" considering, among other things, "the nature and cost of the accommodation," "the impact otherwise of such accommodation upon the operation of the facility," and "the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity."  42 U.S.C. § 12111(10)(A)-(B); *see Atencio*, 198 F. Supp. 3d at 357 (citing 42 U.S.C. § 12111(10)(A)-(B)).

Here, Defendants have proffered undisputed evidence that permitting Cruz to work remotely would have imposed an undue hardship on the Compensation Division.  When Cruz sought her accommodation, the Transit Authority was experiencing a significant backlog in claims processing as a result of the COVID-19 pandemic.  Pl. RSUF ¶ 38.  The Compensation Division saw claims rise just before the pandemic, and the transition to remote work put the division further behind in processing this influx of claims.  *Id.* ¶¶ 35-38.  The departure of two Assistant Directors, who managed Compensation Division staff, put the Compensation Division even further behind.  *Id.* ¶¶ 49-51.  The backlog led to friction with the unions that represented the injured employees, and harmed the Transit Authority employees whose claims were not being processed.  *See* Sweeney Decl. ¶¶ 14-15, 30-31.  The record also reflects that during the COVID-19 pandemic, managers in the Compensation Division had a "demonstrated lack of success in completing their duties and managing employees remotely."  Pl. RSUF ¶ 53.  Sweeney observed that Administrative Directors or Managers could ensure that Claims employees were adequately handling their claims work only if those employees answered their phones, which was a "huge problem" during the mandated remote-work time period.  *Id.* ¶¶ 43-45.  Remote supervisors also could not mentor employees effectively, and division-wide Microsoft Teams meetings were unsuccessful because of technology issues.  *Id.*

¶¶ 46-47.  Finally, working remotely would not address the fact that Cruz was falling asleep during work hours; indeed, working remotely may have further enabled such deficient performance.  *See id.* ¶ 132 (Cruz informing her supervisor that she fell asleep and missed a meeting while working from home in August 2021).  All of these issues support a finding that a remote-work accommodation would impose an undue hardship on Defendants.

Indeed, the majority of courts in this Circuit to have considered whether requests to work from home are unreasonable or impose an undue hardship have "f[ound] that requests to work without supervision are unreasonable."  *McMillan*, 711 F.3d at 128 n.4.  And while the Second Circuit has suggested that permitting remote work might, "in some cases, constitute a reasonable accommodation," *id.*, Cruz has not offered any evidence to rebut Defendants' undue-hardship showing, such as identifying other employees who were permitted to work from home, *see Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 419 (S.D.N.Y. 2014) (denying motion for summary judgment where there was a question of fact about whether other employees were permitted and able to work from home at the time plaintiff requested such accommodation).

Since there is no genuine dispute of material fact about whether Cruz's proposed accommodation would have permitted her to perform the essential functions of her job, or about whether it would have imposed an undue hardship on Defendants, the Court will grant Defendants' motion for summary judgment on Count II.

### B.    Discriminatory Termination Claim (Count I)

Cruz also claims that she was ultimately terminated on the basis of her disability in violation of the Rehabilitation Act.  AC ¶¶ 17-21.  Specifically, she alleges that she suffered from degenerative knee arthritis, insomnia, and sleep apnea, *id.* ¶ 10, and claims that she was terminated in violation of the Rehabilitation Act, *see id.* ¶¶ 11-12, 14, 16, 19.

### 1.   Legal Standard

Claims of discrimination under the Rehabilitation Act are evaluated under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Jackson v. N.Y.C. Dep't of Educ.*, 768 F. App'x 16, 17 (2d Cir. 2019) (summary order) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002)).  To establish a *prima facie* case of discriminatory termination in violation of the Rehabilitation Act, a plaintiff must show that (1) her "employer is subject to the [Rehabilitation Act]"; (2) she "was disabled within the meaning of the [Rehabilitation Act]"; (3) she "was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation"; and (4) she "suffered adverse employment action because of [her] disability."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)); *see also Barbier v. Raimondo*, --- F. Supp. 3d ---, 2024 WL 4931891, at *10 (S.D.N.Y. Dec. 2, 2024) (same).  The Rehabilitation Act "requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."  *Natofsky*, 921 F.3d at 348; *see id.* at 345 ("[W]hen a plaintiff alleges an employment discrimination claim under the Rehabilitation Act, the causation standard that applies is the same one that would govern a complaint alleging employment discrimination under the ADA.").  If a plaintiff establishes her *prima facie* case, the burden shifts to the defendant to provide "a legitimate non-discriminatory reason for the discharge."  *Sista*, 445 F.3d at 169.   If the defendant succeeds, "the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  *Jackson*, 768 F. App'x at 17 (quoting *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015)); *see Stanley v. City Univ. of N.Y.*, No. 18-cv-04844 (PAE), 2023 WL 2714181, at *10 (S.D.N.Y. Mar. 30, 2023) (same),

*aff'd sub nom. Stanley v. Phelon*, No. 23-731, 2024 WL 1453872 (2d Cir. Apr. 4, 2024) (summary order).

### 2. Analysis

Defendants advance two arguments in support of their motion for summary judgment on this claim.  Defendants argue that (1) Cruz has not established her *prima facie* case of discrimination because she was not qualified to perform the essential functions of her job and has adduced no evidence from which one could infer that she was terminated because of her disability; and (2) she was terminated for a legitimate, nondiscriminatory reason — namely, sleeping on the job.  *See* Br. at 21-22.  The Court will address each argument in turn.

Based on the record presented, Cruz has not established a *prima facie* case of discriminatory termination.  Defendants do not contest that NYC Transit and the MBSTA are subject to the Rehabilitation Act or that Cruz was disabled within the meaning of the Rehabilitation Act.  Br. at 21.  However, Cruz was not able to perform the essential functions of her job because of her repeated instances of falling asleep at work (or losing consciousness, as she characterizes it).  Cruz does not contest that being awake and alert during the workday was an essential part of her job.  Instead, she claims that Defendants have not detailed her essential job functions and repeats her criticisms of their reliance on Sweeney's declaration, *see* Opp. at 12-13, arguments that this Court has rejected, *see supra* pp. 2-4, 25.  Numerous courts — both in this Circuit and elsewhere — have found that remaining awake at work is necessary to perform essential functions for a wide range of roles.  *See, e.g.*, *Brown*, 153 F. Supp. 2d at 185 (plaintiff's sleep apnea made him unable to perform the essential functions of his job as a bus driver); *Shepheard v. N.Y.C. Corr. Dep't*, 360 F. App'x 249, 250-51 (2d Cir. 2010) (summary order) (plaintiff's "excessive sleeping and grogginess" "compromised her ability to be focused and alert . . . and therefore compromised her ability to perform the

essential functions of her position" as a corrections officer, including supervising subordinates).  It goes without saying that Cruz's in-person role daily supervising other employees as an Administrative Manager likewise required her to be awake and conscious.  *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582-83 (5th Cir. 2020) (personnel manager found sleeping or unconscious on the job could not perform the essential functions of his job with or without an accommodation).  Since Cruz could not perform the essential functions of her job, she cannot establish her *prima facie* case for discriminatory termination under the Rehabilitation Act.

Even if the Court concluded that Cruz had established her *prima facie* case, however, Defendants have satisfied their burden to identify a legitimate, nondiscriminatory reason for Cruz's termination.  Under the Rehabilitation Act, "[o]n-the-job misconduct and poor work performance always constitute legitimate and nondiscriminatory reasons for terminating employment, even where the misconduct is caused by an undivulged [disability]."  *Risco v. McHugh*, 868 F. Supp. 2d 75, 109 (S.D.N.Y. 2012) (quoting *Canales-Jacobs v. N.Y. State Off. of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009)); *cf. McElwee*, 700 F.3d at 641 ("[U]nder the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even which such misconduct is related to a disability.").  Defendants point to the fact that sleeping at work violated the 2016 Rules.  *See* Br. at 18-19, 22.  Rule 11(e) prohibits "sleep[ing] . . . whether on or off duty, on [Transit] Authority property."  2016 Rules r.11(e).  "Disobedience of the[] rules," including Rule 11(e), "or any neglect of duty, or any disorder, or any act or omission prejudicial to efficiency or discipline . . . shall be reason for charges of misconduct and incompetence . . . subject to the penalty of dismissal."  *Id.* r.2(b).  The Transit Authority treats sleeping on duty as a serious offense, and "[b]oth [s]leeping on [d]uty and [g]ross [m]isconduct are among the infractions for which [the]

Transit [Authority] will seek dismissal, even if the employee is being disciplined for the first time." Kamara Decl. ¶ 10. The SIR investigation and Report indicated to Defendants that Cruz had been sleeping at work for several months in view of those she supervised, and was neglecting her supervisory role. *See* SIR Report at 2-4. Cruz was charged with sleeping on duty, gross misconduct, nonperformance of duty, and improper performance of duty, and was terminated as a result. Pl. RSUF ¶ 137.

Cruz counters that the 2016 Rules do not apply to her because they "prescribe[] employee conduct relating to the safe operation of trains and buses," and she was an administrator. Opp. at 3 (quoting Dkt. 50-2 at 2). Cruz relies on language from the rules that is taken out of context. The portion she relies upon advises that "[t]he rules set forth in th[e] [2016] Rule Book that prescribe employee conduct relating to the safe operation of trains and buses are intended to place a higher standard of care on employees than is required by law." Dkt. 50-2 at 2; *see* Reply at 9. Nothing in the 2016 Rules indicates that the general rules that "are applicable to and must be obeyed by all employees," 2016 Rules r.2(a), apply only to Transit Authority employees who are operators of trains and buses, and not to Cruz as an Administrative Manager in the Transit Authority's Compensation Division. Indeed, Cruz signed and acknowledged these rules when she began working at the Transit Authority. Dkt. 50-2 at 1. Thus, the Court is persuaded that Defendants have identified a legitimate, nondiscriminatory reason for Cruz's termination.

Since Defendants have identified a legitimate, nondiscriminatory reason for Cruz's termination, the burden shifts back to Cruz to produce evidence that Defendants' proffered reason is a pretext for discrimination. Cruz has not done so. The only reference to pretext she makes is a passing reference to the "pretextual reasons for the involuntary termination of [her] employment." Opp. at 3. "[W]hen an employer provides convincing evidence to explain its

conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010).  Cruz has offered only conclusory allegations of pretext and discrimination to rebut the reason Defendants identified for her termination, and thus she has not met her burden at the third step of the *McDonnell Douglas* test.

     The Court will therefore grant Defendants' motion for summary judgment on Count I.

## II.    State and City Law Claims (Counts III, IV, V, VI, and VII)

     Cruz next claims that her termination and Defendants' denial of her requested accommodation violated the NYSHRL and NYCHRL.  *See* AC ¶¶ 27-46.  She also claims that Defendants refused to engage in an interactive process regarding her request for an accommodation in violation of the NYCHRL.  *See id.* ¶¶ 47-51.  The Court will decline supplemental jurisdiction over these remaining state and city claims.

     Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if, among other things, "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).  As the Supreme Court has observed, and as echoed by the Second Circuit, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) (similar); *Dhar v. N.Y.C. Dep't of Transp.*, 630 F. App'x 14, 16 (2d Cir. 2015) (summary order) (holding "that the district court did not abuse its discretion when it declined

to exercise supplemental jurisdiction over [the plaintiff's] NYCHRL claim" after granting summary judgment in favor of the defendants and dismissing the plaintiff's federal-law claims). "Indeed, the Second Circuit has held that 'in the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a "disability" as defined by the New York state and municipal law is a question best left to the courts of the state of New York . . . .'" *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 317 (S.D.N.Y. 2003) (quoting *Giordano*, 274 F.3d at 754).

Cruz's federal claims are dismissed and the Court declines to exercise supplemental jurisdiction over her remaining state and local law claims under the NYSHRL and NYCHRL, which are better suited for the state courts of New York. Accordingly, Cruz's NYSHRL and NYCHRL claims are remanded to New York state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment as to Counts I and II. Cruz's remaining NYSHRL and NYCHRL claims, Counts III through VII, are REMANDED to New York state court. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 44 and close the case.

Dated: February 19, 2025
New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge